UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

EUGENE CZYZ and LESA STONECHEK,
Individually and on behalf of the Estate of
ERNA MONTOYA

        Plaintiffs,

vs.                                   Case No. CV 08-00767 MV/RHS

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Hartford's Motion for Leave to File Third-Party Complaint **[Doc. No. 30]** and Plaintiffs' Motion for Leave to File Second Amended Complaint **[Doc. No. 31]**.

## FACTUAL BACKGROUND

In this lawsuit, Plaintiffs allege that Defendant Hartford Life and Accident Insurance Company ("Hartford") wrongfully paid life insurance benefits under the Group Long Term Disability, Life and Supplemental Life Plan of Ducommun Incorporated ("the Plan") to Robert Francis. Specifically, Plaintiffs allege that Erna Montoya, a participant in the Plan, had completed beneficiary forms naming her natural children, Lesa Stonechek, Jeremy Montoya, Eugene Czyz and Felicia Jacquez, as primary beneficiaries and naming Robert Francis, her fifth husband, as a contingent beneficiary. Plaintiffs allege that subsequently there was a forgery and/or an illegal changing of these forms. Specifically, the term "primary" was crossed off and changed to "contingent" and the term "contingent" was crossed off and changed to "primary."

Thus following the alleged forgery, Mr. Francis was listed as the primary beneficiary and Ms. Montoya's children were listed as the contingent beneficiaries.  Plaintiffs allege that Hartford acted wrongfully in failing to investigate the forgery, in refusing to pay benefits to Ms. Montoya's children, and in improperly paying benefits to Mr. Francis.  Plaintiffs' First Amended Verified Complaint for Declaratory Judgment **[Doc. No. 4]** includes two counts against Hartford:  one for declaratory judgment that Erna Montoya's natural children are the intended primary beneficiaries under the insurance contracts and one for breach of contract, which alleges that under the provisions of ERISA, 29 U.S.C. § 1001 *et. seq.*, Hartford should have determined that the proper primary beneficiaries were Ms. Montoya's natural children before wrongfully paying Mr. Francis.

## HARTFORD'S MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT

As Plaintiffs have alleged that Mr. Francis is responsible for forging and/or illegally changing the beneficiary designation forms, Hartford seeks leave to file a third-party complaint against Mr. Francis.  Plaintiffs do not oppose Hartford's motion for leave.  Accordingly, this Court will grant Hartford's Motion for Leave to File Third-Party Complaint **[Doc. No. 30]**. Hartford shall have 30 days from the entry of this Order to file a third-party complaint against Mr. Francis.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiffs seek leave to file a second amended complaint against Hartford.  Plaintiffs' proposed second amended complaint, which is attached as Exhibit 1 to Plaintiffs' motion **[Doc. No. 31]**, would make some minor wording changes and corrections to the facts and claims set forth in Plaintiffs' first amended complaint **[Doc. No. 4]**, would add several new paragraphs to

the portion of the complaint listing the "Facts Common To All Counts" (which discuss, among

other things, the alleged timing of events following Ms. Montoya's death and what was known

to Hartford), and would add three new counts:  (1) that Hartford engaged in bad faith and

breached its fiduciary duties as an insurer and is therefore liable for, among  other things,

punitive damages; (2) that Hartford violated the New Mexico Unfair Insurance Practices Act,

NMSA 1978 § 59A-16-1 *et seq.*, and specifically NMSA 1978 § 59A-16-20, which prohibits

unfair and deceptive claims practices; and (3) that Hartford violated the New Mexico Unfair

Practices Act, NMSA 1978 § 57-12-1 *et seq.*  Hartford opposes Plaintiffs' motion for leave on

the basis that the claims Plaintiffs seek to add to their complaint are preempted by ERISA and

thus amendment would be futile.

The Federal Rules of Civil Procedure provide that a "court should freely give leave [to

amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court, however, is not required to

grant leave to amend if amendment would be futile.  *Anderson v. Merrill Lynch Pierce Fenner &

Smith*, 521 F.3d 1278, 1288 (10th Cir. 2008).  "A proposed amendment is futile if the complaint,

as amended, would be subject to dismissal."  *Id.* (internal quotations omitted).

ERISA's preemption provisions contain three clauses:  the preemption clause, the savings

clause, and the deemer clause.  ERISA's preemption clause broadly preempts "any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C.

§ 1144(a).  ERISA's savings clause, however, contains an exception to ERISA's broad

preemption clause by excepting from the preemption clause laws that regulate insurance,

banking or securities.  29 U.S.C. § 1144(b)(2)(A).  A state law "regulates insurance" so as to fall

within ERISA's savings clause only if it is both "specifically directed towards entities engaged

in insurance" and "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003). Finally, ERISA's deemer clause "makes clear that a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (quoting 29 U.S.C. § 1144(b)(2)(B)). As the United States Supreme Court has observed, ERISA's preemption provisions are "deliberately expansive." *Pilot Life Ins. Co.*, 481 U.S. at 45-48; *accord Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003).

In addition to express preemption by the statutory terms of ERISA, a state law can also be preempted where it conflicts with federal law. *Kidneigh*, 345 F.3d at 1185. Thus, the Tenth Circuit has recognized that a state law cause of action is preempted under ERISA when it "provides remedies beyond those contained in ERISA itself" and thus conflicts with ERISA's remedial scheme. *Id.*

Applying the above principles, both the United States Supreme Court and the Tenth Circuit have held that ERISA preempts state law bad faith and unfair practices claims such as those Plaintiffs seek leave to assert. In *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41 (1987), for example, the Supreme Court held that ERISA preempted a state law cause of action based on the Mississippi law of bad faith, in which an employee alleged improper processing of a claim for benefits under an employee benefits plan. In concluding that the claim related to an employee benefit plan, but did not "regulate insurance" so as to fall within ERISA's savings clause, the Supreme Court found that the Mississippi law of bad faith, even though associated with the insurance industry, was not specifically directed toward the insurance industry but

4

rather had its roots in general principles of tort and contract law. *Id.* st 48-51. The Court further found that "the Mississippi common law of bad faith does not effect a spreading of policyholder risk," as it does not control the substantive terms of the insurance contract but "declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." *Id.* at 50-51. Additionally, the Supreme Court found that the Mississippi law of bad faith was inconsistent with ERISA's exclusive civil enforcement scheme, as it provided for the recovery a punitive damages—a remedy not available under ERISA. *Id.* at 52-57.

Likewise, in *Kidneigh v. UNUM Life Insurance Company of America*, 345 F.3d 1182 (10th Cir. 2003), the Tenth Circuit held that "Colorado bad faith claims are preempted by ERISA because they conflict with ERISA's remedial scheme" in that they provide remedies, including consequential and punitive damages, that are unavailable under ERISA. *Id.* at 1185. The Tenth Circuit further found that "[i]n addition to being preempted due to conflict with ERISA's remedial scheme," the plaintiffs' Colorado bad faith claims were also expressly preempted under ERISA, as they related to an employee benefit plan but did not fall within ERISA's savings clause. *Id.* at 1186. In concluding that Colorado bad faith law does not "regulate insurance" so as to fall within ERISA's savings clause, the Tenth Circuit (like the Supreme Court in *Pilot Life Insurance*) held *inter alia* that "state bad faith claims do not substantially affect the risk pooling arrangement between insurers and their insureds." *Id.* at 1187 (internal quotations omitted). The Court explained that bad faith claims, whether common law or statutory, do not alter the substantive terms of the insurance contract, but instead "merely provide an additional remedy for policyholders." *Id.*

5

The *Kidneigh* Court is not alone in finding state law bad faith claims to be preempted by ERISA on the basis that they conflict with ERISA's remedial scheme and/or fall outside ERISA's savings clause.  As the Court in *Kidneigh* observed:  "An examination of Tenth Circuit case law on the preemption of state law bad faith claims under ERISA underscores our conclusion that bad faith claims will rarely, if ever, be saved from preemption."  *Id.*; *see, e.g., Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1235-37 (10th Cir. 2002) (ERISA preempts Wyoming tort of insurance bad faith and Wyoming statutory laws relating to the fair processing of claims); *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 465-66 (10th Cir. 1997) (ERISA preempts Oklahoma statutory bad faith law); *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 455-56 (10th Cir. 1989) (ERISA preempts causes of action based on Colorado statute prohibiting unfair and deceptive practices in the insurance industry and Colorado's common law of bad faith).

Notably, the District Court for the District of New Mexico has repeatedly held that ERISA preempts New Mexico common law and statutory bad faith and unfair practices claims such as those Plaintiffs seek leave to bring.  In *Wexler v. Brokerage Servs., Inc.*, No. Civ. 88-1487, 1989 WL 379862 (D.N.M. Oct. 18, 1989), for example, the plaintiff alleged bad faith, breach of contract, and violations of the New Mexico Unfair Insurance Practices Act, NMSA § 59A-16-1 *et seq.* based on his insurer's refusal to pay benefits alleged owed to him under an ERISA-governed plan.  *Id.* at *1.  The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the state law claims were preempted by ERISA and the District Court agreed.  *Id.* at *1-2.  The Court found that it was "well settled that Plaintiff's common law state claims of bad faith and breach of contract are not within the reach of [ERISA's] saving

6

clause and are therefore preempted by ERISA." *Id.* at *2. The Court likewise found that Plaintiff's statutory claim under the New Mexico's Unfair Insurance Practices Act was preempted as the statute does not spread policyholder risk or control the substantive terms of the insurance contract, but rather prevents and remedies unfairness in the insurance industry, and thus does not "regulate insurance" within the meaning of ERISA's savings clause. *Id.* Additionally, the Court found that application of the New Mexico statute would conflict with the exclusive nature of ERISA's civil enforcement remedies. *Id.* Other New Mexico District Court opinions have similarly found New Mexico state common law and statutory bad faith and unfair practice claims to be preempted. *See, e.g., Schoen v. Presbyterian Health Plan, Inc.*, Nos. Civ. 08-687 & 08-970, 2009 WL 1299680, at *3-4 & 7-8 (D.N.M. Feb. 19, 2009) (ERISA preempts state law claims for unfair insurance practices that seek to enforce an insured's rights to proper processing of claims); *Nechero v. Provident Life & Accident Ins. Co.*, 795 F. Supp. 374, 380-81 (D.N.M. 1992) (ERISA preempts claims alleging violations of the New Mexico Unfair Insurance Practices Act and the New Mexico Unfair Practices Act (the statutory claims Plaintiffs seek to add in this case), as well as tort claims involving improper processing or delay in paying insurance claims, bad faith insurance claims, and breach of contract claims); *Emmons v. Equitable Life Assurance Soc'y of U.S.*, 799 F. Supp. 1123, 1129 (D.N.M. 1992) (ERISA preempts claims alleging violations of the New Mexico Unfair Insurance Practices Act).

In light of the above well-established law, this Court finds that the claims Plaintiffs seek leave to add are preempted by ERISA. All of claims Plaintiffs seeks leave to add arise out of Hartford's failure to pay Plaintiffs benefits under a plan governed by ERISA and thus fall within ERISA's broad preemption clause. Further, none of the claims are saved by ERISA's savings

clause as they do not substantially affect the risk pooling arrangements between the insurer and the insured as required for a state law to "regulate insurance" within the meaning of ERISA's savings clause.  Moreover, Plaintiffs' proposed amended complaint, which would seek (among other remedies) punitive damages, conflicts with ERISA's exclusive remedial scheme.  Thus, following the long line of authority cited above, this Court finds that the claims Plaintiffs seek leave to add are preempted by ERISA.  Accordingly, it would be futile to grant Plaintiffs leave to add the proposed new claims.

Finally, this Court notes that Plaintiffs have made no attempt to distinguish the above authority, but have instead relied exclusively on two cases in arguing that ERISA does not preempt the state law claims they seek to add:  *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company*, 170 F.3d 985 (10th Cir. 2000), and *Tinsley v. General Motors Corporation*, 227 F.3d 700 (6th Cir. 2000).  Plaintiffs' reliance on these cases is misplaced.  In *Woodworker's Supply, Inc.*, the Tenth Circuit held that ERISA did not preempt pre-plan fraud claims against an insurer (i.e., misrepresentations the insurer made to fraudulently induce participation in a plan).  170 F.3d at 989-92.  Notably, however, the Tenth Circuit took great care to distinguish the type of pre-plan activity at issue in *Woodworker's Supply, Inc.* from those claims which it had previously found to be preempted.  *Id.* at 990-92.  Among other things, the Court noted that the claims at issue were directed against the insurer not in its role as an administrator of a plan (since they involved only pre-plan activity), but rather in its role as a seller of insurance.  *Id.* at 991.  The Court thus found the claims in that case to be distinguishable from those involving misconduct growing out of the administration of a plan, which are preempted by ERISA.  *Id.* at 990-92.  As the claims Plaintiffs seek to add against Hartford do not

8

involve pre-plan conduct but rather arise from Hartford's obligations as an administrator of a plan, *Woodworker's Supply, Inc.* is inapposite.

Plaintiffs' reliance on *Tinsley* is likewise misplaced.  While Plaintiffs assert that *Tinsley* "recognized that state statutes relating to payment of benefits are not preempted by ERISA" **[Doc. No. 36 at 4]**, Plaintiffs have misrepresented the holding of *Tinsley*.  In *Tinsley*, the Sixth Circuit explicitly held that "the question [of] whether [the plaintiff was] entitled to the proceeds from [decedent's] life insurance plan due to the alleged forgery of [decedent's] signature on the beneficiary designation change form or the alleged exercise of undue influence . . . is preempted by ERISA and governed by federal law."  227 F.3d at 704 (further explaining that "claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach" and looking to state law only for guidance in developing federal common law).  Thus, *Tinsley* supports this Court's conclusion that granting Plaintiffs leave to assert state law claims would be futile.

In addition to seeking to add new state law claims, Plaintiffs' proposed second amended complaint **[Doc. No. 31, Ex. 1]** also includes some minor wording changes and corrections to the facts and claims set forth in the first amended complaint, as well as additions to the portion of the complaint listing the "Facts Common To All Counts."  Defendant does not object to these changes in its brief.  Accordingly, while this Court will deny Plaintiffs' motion to the extent it seeks leave to add new state law claims, this Court will grant Plaintiffs leave to make the proposed amendments to its existing claims and to add any of the proposed new paragraphs to the factual section of its complaint that it deems relevant to its existing claims.

9

**IT IS THEREFORE ORDERED** that

1.      Hartford's Motion for Leave to File Third-Party Complaint **[Doc. No. 30]** is

**GRANTED**.  Hartford shall have 30 days from the entry of this Order to file a

third-party complaint against Mr. Francis.

2.      Plaintiffs' Motion for Leave to File Second Amended Complaint **[Doc. No. 31]** is

**GRANTED in part** and **DENIED in part** as follows.  Plaintiffs are granted

leave to file an amended complaint that makes the modifications to their existing

claims reflected in Exhibit 1 to their motion and that includes any of the new

paragraphs contained in the portion of Exhibit 1 listing the "Facts Common To

All Counts" that Plaintiffs' deem relevant to their existing claims.  Should

Plaintiffs elect to make any of the aforementioned changes, they shall have 14

days from the entry of this Order in which to file their amended complaint.

Plaintiffs, however, are denied leave to add the proposed new counts to their

complaint.

DATED this 23rd day of March, 2010.

_____
MARTHA VAZQUEZ
Chief District Court Judge

Attorneys for Plaintiffs:
          Steven Vogel, Esq.
          Theodore W. Barudin, Esq.

Attorney for Defendant:
          Jack M. Englert , Jr., Esq.
          Kristina Martinez, Esq.