# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

EUGENE CZYZ and LESA STONECHEK,
Individually and on behalf of the Estate of
ERNA MONTOYA

        Plaintiffs,

vs.                                  Case No. 1:08-cv-00767 MV/RHS

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Hartford's Motion for Summary Judgment (Doc. 42), Plaintiffs' Motion for Summary Judgment Regarding the Void/Void Ab Initio Beneficiary Designations Due to Forgery (Doc. 46), and Hartford's Motion in Limine to Strike Extra-Record Evidence (Doc. 57). The Court, having considered the motions, briefs, record, relevant law and being otherwise fully informed, will grant Hartford's Motion for Summary Judgment and Motion in Limine to Strike Extra Record Evidence and will deny Plaintiffs' Motion for Summary Judgment Regarding the Void/Void Ab Initio Beneficiary Designations Due to Forgery.

## <u>OVERVIEW</u>

In this lawsuit, Plaintiffs allege that Defendant Hartford Life and Accident Insurance Company ("Hartford") wrongfully paid life insurance benefits to Robert Francis. Specifically, Plaintiffs allege that Decedent Erna Montoya had completed a beneficiary designation form naming her natural children as the primary beneficiaries and naming Robert Francis, her fifth

husband, as the contingent beneficiary.  Plaintiffs allege that subsequently there was a forgery and/or an illegal changing of the form.  Specifically, the term "primary" was crossed off and changed to "contingent" and the term "contingent" was crossed off and changed to "primary."  Thus, following the alleged forgery, Mr. Francis was listed as the primary beneficiary and Ms. Montoya's children were listed as the contingent beneficiaries.  Plaintiffs allege that Hartford acted wrongfully in failing to investigate the forgery, in refusing to pay benefits to Ms. Montoya's children, and in improperly paying benefits to Mr. Francis.  Plaintiffs' Second Amended Complaint for Declaratory Judgment (Doc. 39) includes two counts against Hartford: one for declaratory judgment, which requests that the Court declare that Erna Montoya's natural children are the intended primary beneficiaries under the insurance contract, and one for breach of contract, which alleges that under the provisions of ERISA, 29 U.S.C. § 1001 *et. seq.*, Hartford should have determined that the proper primary beneficiaries were Ms. Montoya's natural children before wrongfully paying Mr. Francis.

Hartford's Motion for Summary Judgment (Doc. 42) argues that Hartford is entitled to summary judgment as to all claims as, based on the administrative record, it reasonably paid the claim of Mr. Francis.  Plaintiffs' Motion for Summary Judgment Regarding the Void/Void Ab Initio Beneficiary Designations Due to Forgery (Doc. 46), on the other hand, seeks summary judgment declaring that the beneficiary form is void due to forgery and that Ms. Montoya's four natural children are the primary beneficiaries of the life insurance policy.  Finally, Hartford's Motion in Limine to Strike Extra-Record Evidence (Doc. 57) seeks to strike certain evidence submitted by Plaintiffs in connection with the reply brief Plaintiffs filed in support of their motion for summary judgment.

## THE ADMINISTRATIVE RECORD

The following facts are taken from the administrative record.[1]  (Doc. 43).

Ducommun Incorporated sponsored a Group Benefit Plan for its employees, which includes both disability insurance coverage and life insurance coverage for eligible employees. Rec. 67-115.  The portion of the plan addressing life insurance provides that a covered employee "may designate or change a beneficiary by doing so in writing on a form satisfactory to [Hartford] and filing the form with the Employer."  Rec. 106.  It further provides that "[o]nly satisfactory forms sent to the Employer prior to [the covered employee's] death will be accepted," that designations "become effective as of the date [the covered employee] signed and dated the form," even if he or she has since died, and that Hartford is not liable "for any amounts paid before receiving notice of a beneficiary change from the Employer."  *Id.*  Under the terms of the plan, a covered employee's death benefits are to be "paid in lump sum to the beneficiary(ies) designated by [the employee] in writing and on file with the Employer." Rec. 96.  The plan requires a claimant to provide a "completed claim form, a certified copy of the death certificate, and [the covered employee's] enrollment form."  *Id.*  The plan designates Hartford "as the claims fiduciary for benefits provided under the Policy" and grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provision of the Policy."  Rec. 109; *see also* Rec. 105 & 112.

Decedent Erna Montoya was an employee of Ducommun and was enrolled for basic and supplemental life insurance under the plan.  Though she had stopped working due to disability,

---

[1]  The administrative record was filed as Document No. 43 and is Bates stamped.  For ease of reference, this Court will cite to the administrative record as "Rec." and will reference the pages therein using the Bates stamp numbers.

3

she continued to be eligible for these life insurance benefits under the plan.  Rec. 18-19 & 59-60.

On August 1, 2007, Erna Montoya, who was suffering from end-stage ovarian cancer, died.  Rec. 167.

On August 14, 2007, Hartford received a call from Decedent's daughter.  The record of the call is as follows:

> call fr daughter to advise clmt deceased on 8/1/2007.  call trans from individual life area at htfd.Expl what is needed for life clm.  Caller will contact employer.  csr sending email fyi to pw examiner

Rec. 5.

A notation dated August 19, 2007 indicates that Hartford expected that it would be receiving a claim from Decedent's employer.  *Id.*

On August 22, 2007, Robert Francis, who was the spouse of Decedent at the time of her death, faxed claim materials to Hartford.  Rec. 163-67.  The claim materials included Ducommun's Employer's Statement (Rec. 164-65), Mr. Francis's Beneficiary's Statement (Rec. 166), and a copy of Decedent's Certificate of Death (Rec. 167).  There is also a notation from August 22, 2007 stating "Son called" and indicating that he had received a claim form from Decedent's employer and would be faxing it into the examiner.  Rec. 4.

On August 30, 2007, Hartford left a message for Patty Nelson at Ducommun requesting that she provide a corrected claim form and Decedent's beneficiary designation form.[2]  *Id.*  That

---

[2]  Plaintiffs argue that the record of this call, which includes the notation "Left message Patty Nelson to correct claim form and forward it to me along with the bene designation" (Rec. 4), "raises the inquiry as to what 'correction' was contemplated or occurred to the disputed beneficiary forms referenced by Hartford in the diary entry."  (Doc. 53 at p. 3).  Plaintiffs arguments regarding the record of this call is misleading for two reasons.  First, the record of the call does not indicate any correction with respect to the beneficiary designation form; the noted correction is to the claim form.  Second, the full record of the call identifies the issue—the claim form received from Robert Francis indicates benefits are $70,000 for basic and $50,000 for

same day, Ms. Nelson sent a fax to Hartford.  Rec. 184-89.  The fax includes a note that reads as

follows:

> August 30, 2007
>
> Re: Erna Montoya
>
> I attached documentation from the July 16, 2007 conversation with Robert Francis.
>
> August 29, 2007, Mr. Robert Francis called asking for the beneficiary designation form, he stated the children are suing him and he needs to show he is the primary beneficiary.  When I looked through Erna's file I found two Beneficiary Designation forms, however they were two different forms, dated the same day, signed by Erna however with different beneficiaries.
>
> When Robert calls today asking for the forms to be faxed, I will be letting him know that he will have to go through Hartford.

Rec. 185.  It also includes a copy of the life insurance beneficiary designation that Ducommun

had in its files for Decedent, as well as a copy of the accidental death and dismemberment

insurance beneficiary designation that Ducommun had in its files for Decedent.  Rec. 186-87.

Additionally, the fax includes a revised Employer's Statement, which corrects the amount of

coverage claimed.  Rec. 188-89.

The two beneficiary designation forms—one for life insurance and one for accidental

death and dismemberment insurance—are both dated February 4, 2005.  The life insurance form,

which was applicable due to the nature of Decedent's death, appears to have originally named

Decedent's four children as the primary beneficiaries and Decedent's spouse, Mr. Francis, as the

contingent beneficiary.  Rec. 186; *see also* Rec. 152-53.  Although the printed form provides six

rows to list beneficiaries (the first two rows for primary beneficiaries and the last four rows for

---

supplemental life insurance whereas other records indicate these amounts should be $68,000 and $45,000, respectively.  Rec. 4; *see also* Rec. 188-89 (corrected Employer's Statement).

contingent beneficiaries), Decedent's four children are handwritten on the first four rows and the typewritten word "Contingent" (appearing on the third row is crossed out).  The fifth row of the form is left blank and on the sixth row of the form, Mr. Francis is listed and handwritten by his name is the word "Contingent."  It appears, however, that the form was subsequently changed so as to designate Ms. Montoya's children as the contingent beneficiaries and Mr. Francis as the primary beneficiary.  Specifically, the typewritten word "Primary" appearing on the first row is crossed out and replaced by the handwritten word "Contingent" and the handwritten word "Contingent" appearing on the sixth row is crossed out and replaced by the handwritten word "Primary."  Rec. 152-53 & 186.

The accidental death and dismemberment insurance form similarly provides six rows to list beneficiaries (the first two rows for primary beneficiaries and the last four rows for contingent beneficiaries).  Rec. 187; *see also* Rec. 154-55.  On the form, Decedent's four children are handwritten on the first four rows and the typewritten word "Contingent" (appearing on the third row is crossed out).  The fifth row of the form is left blank and on the sixth row of the form, Mr. Francis is listed and handwritten by his name is the word "Contingent."  There are no other changes to the beneficiary designations.  Where the form is dated, however, it appears that Decedent originally made a mistake, which is crossed out, with a corrected date written beside it.  The initials "EM" appear above the portion which is crossed out.  Rec. 154-55 & 187.

On September 6, 2007, a note appears in the file indicating that Hartford was aware of the handwritten change to the life insurance beneficiary designation form and had therefore requested the original forms from Patty Nelson at Ducommun.  The note reads:

> discuss bene designation with Natalie  she advised to get the originals and Patty
> Nelson at the PH is overniting [sic] to me the beneficiary designation forms have
> the primary crossed off and the contingent written and the contingent is crossed
> off and has primary written there

Rec. 4.  The forms were received by Hartford on September 10, 2007.  Rec. 4 & 152–57.

On September 13, 2007, Patty Nelson at Ducommun informed Hartford by e-mail that

she had "a term life and AD&D enrollment form from 2001 – UNUM" and an "Aetna life

enrollment [form] from 2004" for Decedent and inquired whether Hartford would like copies of

these forms.  Rec. 151.  Ms. Nelson also informed Hartford that other than these forms and those

previously sent to Hartford, there was nothing in Decedent's file.  *Id.*  Hartford replied to the

e-mail requesting copies of the forms and on September 14, 2007, Ducommun faxed the forms to

Hartford, along with duplicates of the previously sent forms.  Rec. 151 & 158-62.  The UNUM

form, dated October 17, 2001, designates three of Decedent's children as beneficiaries.

Rec. 159.  The Aetna form, dated April 28, 2004, designates Mr. Francis as the beneficiary and

lists three of Decedent's children as "Covered Dependents."  Rec. 160.

A September 18, 2007 note indicates that on that date, the claim was discussed at

Hartford and a decision was made that the "claim is to be paid to Robert Francis as named

beneficiary."  Rec. 3.  By a letter dated September 19, 2007, Mr. Francis was notified of the

claim determination.  Rec. 54-55.

On or about October 1, 2007, Hartford received a letter from Michelle Bowdon, a lawyer

writing on behalf of Mr. Francis, requesting a copy of the beneficiary designation form.  Rec. 3

& 190-93.  The letter is dated September 19, 2007 and is postmarked September 19, 2007, but

was not stamped received until October 1, 2007.  Rec. 190 & 193.  The letter indicates, among

other things, that Decedent's children have hired an attorney and believe that they are

beneficiaries of the life insurance policy.  Rec. 190.  It also encloses a copy of a July 21, 2007

letter to Decedent from Hartford indicating a separate policy was surrendered in light of

Decedent's approval for waiver of premium benefits under the group life policy.  Rec. 192.  The

letter by Ms. Bowdon notes that it is Mr. Francis's belief that the surviving children were named

beneficiaries of the surrendered policy.  Rec. 190.  The letter requests that Hartford forward

Mr. Francis a copy of the beneficiary designation form so that he can forward it to the attorney

for the surviving children in the hope that this will resolve the dispute in an amicable manner.

*Id*.  On or about October 3, 2007, Hartford responded to Ms. Bowdon's letter by informing

Mr. Francis that it could not release a beneficiary designation form without a court order.  Rec. 3

& 51.

By letter dated October 9, 2007, counsel for Decedent's Estate requested copies of

materials regarding Decedent's insurance coverage.  Rec. 147-50.  In that letter, counsel

informed Hartford that the Estate was addressing its "concerns to a letter dated September 19,

2007 by attorney Michelle Bowdon indicating that the Francis children have in fact hired an

attorney" and that the Estate was independently seeking documentation from Hartford "as to any

and all benefits available to Ms. Montoya inasmuch as she had four surviving children at the

time of her death."  Rec. 147.  By letter dated October 25, 2007, Hartford responded to the

request stating that it could not release the requested information without a court order.  Rec. 3 &

50.  A series of communications subsequently followed between Hartford and the Estate's

lawyer in late 2007 through early 2008 that ultimately resulted in Hartford's production of the

file to the Estate's counsel after receiving an order from the probate court.  Rec. 1-3, 46-49,

120-30, 137-41 & 143-44.

8

On May 23, 2008, two of Decedent's children, Eugene Czyz and Lesa Montoya, sent a

letter to Hartford stating:

> We are the son and daughter of Erna Mae Montoya and we are writing this letter
> concerned that Hartford Insurance incorrectly paid Robert C. Francis at the time
> of our mother's death.  We know from talking with our mother well before her
> death that she wanted any and all death benefits and life insurance policies to be
> paid to her four natural children including ourselves, Jeremy Montoya, and
> Felicia Jaquez.  We know this because she told us repeatedly that these were her
> wishes and she wanted this to happen with any of her life insurance or any 401k
> policies.
>
> We now understand that Robert C. Francis was paid over 103,000 dollars from
> our mother's death benefits.  We believe that this was paid incorrectly and are
> requesting that Hartford make immediate arrangements to be sure that the four
> natural children of our mother are paid.
>
> We have looked at the different documents that were evidently used by Hartford
> and would like to point out that there is a question as to the signatures and the
> changing of the primary and contingent beneficiaries.
>
> Given that this has now taken a long period of time, we would like to hear from
> you within fifteen days of receiving this letter

Rec. 116-17.

By letter dated May 28, 2008, Hartford responded to the letter from Decedent's children.

Rec. 45.  In its letter, Hartford states in part:

> We paid the death benefits to the named beneficiary.  We reviewed the claim for
> benefits and paid according to the named beneficiary Erna Montoya named.  If
> you have another beneficiary designation form which named another beneficiary
> please forward to us for our review.

*Id*.  The administrative record also contains a May 28, 2008 note, which states in relevant part:

> sent letter to Eugene Czyz and Lesa Montoya advising benefits were paid to our
> named beneficiary.  They feel the benefits paid to Robet [sic] Francis were paid in
> error and they question the signature on the beneficiary designation  This
> beneficiary designation was discuss [sic] with Natalie and Jen and they both
> agreed the benefits were payable to Robert Francis

This lawsuit followed in August 2008.

9

## <u>ADDITIONAL EVIDENCE SUBMITTED BY PLAINTIFFS</u>

In addition to the administrative record, Plaintiffs rely on the following evidence to oppose Hartford's summary judgment motion and to support their own motion for summary judgment.

First, Plaintiffs rely on an affidavit/report by Forensic Document Examiner Thomas E. Van Valkenburgh.  (Doc. 20-3).  Based on his examination of the two Hartford beneficiary designations forms (Rec. 153 & 155) and other samples of Erna Montoya's writings, Mr. Van Valkenburgh concludes that the two Hartford beneficiary designation forms (one for life insurance and one for accidental death and dismemberment insurance) were written by different persons and that the signature of "Erna Montoya" on the Hartford life insurance beneficiary designation form (Rec. 153) is "a simulation by someone who was familiar with the genuine signature of 'Erna Montoya.'" (Doc. 20-3 at pp. 1-4).  Mr. Van Valkenburgh notes, however, that his conclusions are preliminary due to the fact that he does not have any known writing of comparable value from Robert Francis.  (*Id*. at p. 4).

Second, Plaintiffs rely on an affidavit from Decedent's son, Eugene Czyz.  (Doc. 20-4, Ex. 8).  In his affidavit, Mr. Czyz avers, among other things:

> 3.  Prior to my mother's death, it was my and my siblings understanding from discussions with my mother, that her four natural children were to be the primary beneficiaries of any insurance policies and not Robert Francis.

> 4.  It was not discovered by me or my siblings until after my mother passed away on August 1, 2007, that Robert Francis made a claim that he was the primary beneficiary of my mother's Hartford insurance policies despite my understanding directly from my mother prior to her death that any and all proceeds would be paid to her natural children.

> 5.  Evidently Hartford paid Robert Francis the insurance proceeds from my mother's policy and none of the children have received any payment at all.

(*Id*.).  Mr. Czyz's affidavit also discusses the letter he and his sister sent to Hartford dated May 23, 2008, which is discussed above, as well as Hartford's May 28, 2008 response thereto.  (*Id*.).  Mr. Czyz concludes his affidavit by stating that he has been forced to hire attorneys to assist his siblings in obtaining the benefits and proceeds his mother wanted them to have upon her death.  (*Id*.).

Third, Plaintiffs rely on an affidavit from Darlene A. Montoya, the sister-in-law of Decedent.  (Doc. 20-4, Ex. 9).  In her affidavit, Darlene Montoya states that it is her belief that "Robert Francis forged Erna Montoya's insurance forms for the payment of any insurance proceeds" and that the proceeds paid to him "should have gone to Erna Montoya's natural children."  (*Id*.).  She further states that she was at Decedent's apartment, where Decedent living with Robert Francis, just days before Decedent passed away and that while she was there, she "personally and first hand saw two three ring binders," one of which had papers and pages that contained numerous "attempts of what appeared to be someone trying to sign and reproduce Erna Montoya's signature."  (*Id*.).  She states that after observing these attempts, she moved the binders in order to clear the kitchen table.  (*Id*.).  She avers that fifteen to twenty minutes later, when she advised Mr. Francis that she had moved the binders, he told her that the "binders were his" and he then took them and placed them in a bedroom closet.  (*Id*.).

Finally, in connection with their reply in support of their motion for summary judgment, Plaintiffs submit a 7-page facsimile that Plaintiffs' counsel received on September 28, 2010 from Julia Pereira, the Human Resource Manager of Ducommun Technologies.  (Docs. 53-1 & 53-2).  The fax consists of:  (1) a cover sheet; (2) two sample blank beneficiary designation forms; (3) a file notation document prepared by a previous member of the Docummun HR staff, Keri Lyn Roth; and (4) a fax cover sheet from a July 17, 2007 fax Mr. Francis sent to Ms. Roth.

11

(Doc. 53-2).  The file notation indicates *inter alia* that in mid-July 2007, Mr. Francis, on behalf of Erna Montoya, communicated with the HR Department at Ducommun regarding two life insurance policies owned by Ms. Montoya—Policy #OGL303457 (the policy at issue in this suit) and a second private policy.  (Doc. 53-2 at p. 5).  The notation indicates that Mr. Francis faxed Ducommun a durable power of attorney for Ms. Montoya and that Mr. Francis told Ms. Roth that Ms. Montoya could not remember who she had designated as the primary beneficiary on her life insurance policy.  (*Id*.).  In response to his inquiries, Ms. Roth advised Mr. Francis that he was the primary beneficiary on Policy #OGL303457 and that Ms. Montoya had designated two sons and two daughters as secondary beneficiaries; she further advised Mr. Francis that as the private policy was not through Ducommun, any change of beneficiaries as to the private policy would need to be completed with Hartford, but that if Ms. Montoya decided to change the beneficiaries on  Policy #OGL303457, that change would need to be done through Ducommun.  (*Id.*).  The July 17, 2007 fax cover sheet similarly indicates that Mr. Francis faxed Ms. Roth a copy of Ms. Montoya's durable power of attorney and requested information as to who Ms. Montoya had designated as the beneficiary for  Policy #OGL303457, indicating that Ms. Montoya could not recollect who she had designated.  (*Id*. at pp. 6-7).

## ANALYSIS

A.    **Applicable Legal Standards**

The group benefits plan at issue is governed by ERISA.  Under ERISA, plan beneficiaries have the right to federal court review of benefit denials.  29 U.S.C. § 1132(a)(1)(B).  Although the default standard of review for a denial of benefits is *de novo*, when the benefit plan gives the plan administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an arbitrary and capricious

standard of review is applied to the administrator's claim determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000); *Rizzi v. Hartford Life & Accident Ins. Co.*, 613 F. Supp. 2d 1234, 1238 (D.N.M. 2009), *aff'd*, 383 Fed. Appx. 738 (10th Cir. 2010) (unpublished). The plan at issue here provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." Rec. 105, 109 & 112.  It further provides that Hartford shall pay life insurance claims only after it has "approved" the claim submission.  Rec. 96.  Accordingly, the arbitrary and capricious standard is applicable.

"Under the arbitrary and capricious standard, the Court's review is limited to a determination of whether the administrator's interpretation of the plan was reasonable and made in good faith."  *Rizzi*, 613 F. Supp. 2d at 1238; *see also Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008).  An administrator's decision will be upheld as long as it is predicated on a reasoned basis.  *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3356 (2010); *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).  "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one." *Adamson*, 455 F.3d at 1212.  Instead, the Court's review "inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end."  *Id*. (internal quotation omitted).  A decision is arbitrary and capricious if it is "lacking in substantial evidence or contrary to law." *Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1569 (10th Cir. 1993).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker"; it is more than a scintilla but

13

less than a preponderance.  *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1119-20 (10th Cir. 2006).

Further, courts recognize that where the entity that administers an ERISA plan both

evaluates claims and pays benefits, there is an inherent conflict of interest.  *Metro. Life Ins. Co.

v. Glenn*, 554 U.S. 105, 112-15 (2008).  A dual-role conflict of interest does not change the

standard of review that applies, but is a factor courts must take into account in assessing whether

the decision was arbitrary or capricious; the weight given to this factor, however, depends on the

seriousness of the conflict (*i.e.*, the likelihood that the conflict affected the benefits decision).  *Id.*

at 115-17; *Murphy v. Deloitte & Touche Group Ins.*, 619 F.3d 1151, 1157 & n.1 (10th Cir.

2010); *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir. 2009).  As the

Tenth Circuit has explained, "[t]he importance we attach to the existence of a conflict of interest

is proportionate to the likelihood that the conflict affected the benefits decision."  *Graham*, 589

F.3d at 1358.

Finally, the Tenth Circuit has "frequently, consistently, and unequivocally reiterated that,

in reviewing a plan administrator's decision under the arbitrary and capricious standard, the

federal courts are limited to the administrative record."  *Murphy*, 619 F.3d at 1157 (internal

quotations omitted); *see, e.g., Holcomb*, 578 F.3d at 1192; *Weber*, 541 F.3d at 1011; *Hall v.

UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002); *Sandoval v. Aetna Life &

Cas. Ins. Co.*, 967 F.2d 337, 380-81 (10th Cir. 1992); *Woolsey v. Marion Labs., Inc.*, 934 F.2d

1452, 1460 (10th Cir. 1991).  Because of this restriction, extra-record discovery and

supplementation is generally inappropriate.  However, in *Murphy v. Deloitte & Touche Group

Insurance Plan*, the Tenth Circuit clarified its case law prohibiting consideration of extra-record

materials.  Specifically, the Tenth Circuit explained that its "case law prohibits courts from

considering materials outside the administrative record where the extra-record materials sought

to be introduced relate to a claimant's eligibility for benefits," but that "this general restriction does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest."  *Murphy*, 619 F.3d at 1162.

B.     **Review of Hartford's Benefits Determination**

Plaintiffs argue that Hartford did not act reasonably when it paid benefits under Ms. Montoya's life insurance policy to Mr. Francis rather than to Ms. Montoya's children. Specifically, Plaintiffs argue that Hartford was on notice that there were competing claims at the time it paid benefits to Mr. Francis and acted arbitrarily and capriciously by failing to investigate who were the correct primary beneficiaries of the policy and by failing to consider all of the facts and evidence regarding the alleged forgery.  Plaintiffs also argue that Hartford operated under a conflict of interest and thus its decision is entitled to less deference.  Having carefully reviewed the administrative record, the Court concludes that Hartford's claim determination was reasonable and is supported by substantial evidence.

As a preliminary matter, the Court first addresses Plaintiffs' arguments regarding Hartford's conflict of interest.  As noted above, courts recognize that where the entity that administers an ERISA plan both evaluates claims and pays benefits, there is an inherent conflict of interest.  *Glenn*, 554 U.S. at 112-15.  Here, there is no dispute that pursuant to the plan, Hartford both evaluates claims and pays benefits.  Plaintiffs argue, relying on *Fought v. UNUM Life Insurance Company of America*, 379 F.3d 997 (10th Cir. 2004), that as a result of this conflict, the burden shifts to Hartford to demonstrate its decision was reasonable.  However, the Tenth Circuit has recognized that in *Glenn v. Metropolitan Life Insurance Company*, the Supreme Court "expressly reject[ed] and therefore abrogat[ed]" the burden-shifting approach of *Fought*.  *Holcomb*, 575 F.3d at 1192 (citing *Glenn*, 554 U.S. at 116 (holding it is not "necessary

15

or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payer conflict.")).  Instead, *Glenn*, as well as recent Tenth Circuit case law, confirms that the existence of a dual-role conflict neither alters the parties' burdens of proof nor the level of deference accorded an administrator's decision, but is a factor (*i.e.*, one of several different considerations) courts must take into account when reviewing a benefits determination; the weight given to this factor will vary depending on the likelihood it affected the benefits decision.  *Glenn*, 544 U.S. at 115-17; *Murphy*, 619 F.3d at 1157 n.1; *Holcomb*, 578 F.3d at 1192-93.

In this case, the Court finds that there is little likelihood that the dual-role conflict affected Hartford's benefits decision.  Dual-role conflicts are generally raised in cases where benefits are denied.  The reasoning behind recognizing a conflict of interest is that every dollar provided in benefits is a dollar spent by the insurer; there is thus tension between an insurer's own financial interest and its fiduciary obligations to beneficiaries.  *Glenn*, 554 U.S. at 112. What Plaintiffs fail to acknowledge, however, is that this case is distinguishable from typical conflict of interest cases.  Here, there is no dispute as to the amount of benefits that were due; rather, what is disputed is to whom the benefits should be paid.  Thus, while Hartford admittedly operated under a dual-role conflict of interest in that it both evaluated life insurance claims and paid the benefits on such claims, the financial conflict at issue here does not raise the same concerns as those which typically arise in conflict-of-interest cases.  If anything, Hartford would have a financial interest in paying the proper beneficiary so as to avoid a subsequent dispute. Accordingly, while the Court takes into account the dual-role conflict of interest as a factor in its analysis, it does not alter this Court's conclusion that Hartford's claim determination was reasonable for reasons discussed in more detail below.

Examining the administrative record, this Court finds that there is substantial evidence to support Hartford's conclusion that benefits were due to Mr. Francis.  ERISA provides:

. . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

> (A)  for the exclusive purpose of:
>
> > (i)  providing benefits to participants and their beneficiaries; and
> >
> > (ii)  defraying reasonable expenses of administering the plan;
>
> (B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and
>
> (D)  ***in accordance with the documents and instruments governing the plan*** insofar as such documents and instruments are consistent with the provisions of [ERISA]

29 U.S.C. § 1104(a)(1) (emphasis added); *see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 129 S. Ct. 865, 875-76 (2009) (recognizing that a plan administrator is obliged to act in accordance with plan terms and documents and explaining that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for inquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule:  simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules" (internal quotation omitted)).  Here, the relevant provisions of the plan and the beneficiary form on file with Ducommun support Hartford's benefits determination.

As noted above, the plan provides that a participant "may designate or change a beneficiary by doing so in writing on a form satisfactory to [Hartford] and filing the form with

the Employer" and further provides that "[o]nly satisfactory forms sent to the Employer prior to [the covered employee's] death will be accepted" and that designations "become effective as of the date [the covered employee] signed and dated the form."  Rec. 106.  Under the terms of the plan, a covered employee's death benefits are to be "paid in lump sum to the beneficiary(ies) designated by [the employee] in writing and on file with the Employer."  Rec. 96.  At the time of Decedent's death, Ducommun had two Hartford beneficiary designation forms on file for Decedent (one for life insurance and one for accidental death and dismemberment insurance). Rec. 184-89; *see also* Rec. 151-62.  On its face, the form applicable to the present dispute bears what appears to be signature of Erna Montoya, is dated February 4, 2005 (more than two years prior to Decedent's death), and designates Mr. Francis as Decedent's primary beneficiary. Rec. 152-53 & 186.  Accordingly, both the plan and the beneficiary designation form on file support Hartford's claim determination.

Plaintiffs contend, however, that reliance on the beneficiary designation form was not reasonable as Hartford was on notice of competing claims for the life insurance benefits and had a fiduciary duty to investigate the matter before paying Mr. Francis, which it failed to fulfill. Plaintiffs overstate what was known to Hartford.  While the administrative record indicates that Hartford received two calls from Decedent's children in August 2007—one from Decedent's daughter on August 14, 2007 and one from Decedent's son on August 22, 2007—neither of these calls would have necessarily alerted Hartford of a dispute.  During the August 14, 2007 call, Hartford explained to Decedent's daughter what was needed to submit a claim and was informed by the daughter that she would contact Decedent's employer.  Rec. 5 & 181.  The record of the August 22, 2007 call indicates that Decedent's son called and that he had received a claim form from Decedent's employer and would be faxing it to the examiner.  Rec. 4.  That same day,

Hartford received a claim from Mr. Francis; no fax or other communication from Decedent's children followed until after the claim was paid to Mr. Francis.  Rec. 3-4.  Rather than assuming the existence of a dispute, one could just as easily assume based on these calls that Mr. Francis and Decedent's children were working together to take care of various matters following Decedent's death.  Accordingly, as of the time Mr. Francis submitted his claim, there was nothing in the record that would clearly indicate the existence of a dispute.

On August 30, 2007 (approximately one-week after Mr. Francis submitted his claim and before payment was made to Mr. Francis), however, Hartford left a message for Patty Nelson at Ducommun requesting, among other things, transmittal of Decedent's beneficiary designation form.  Rec. 4.  That same day, Ms. Nelson faxed Hartford a copy of the applicable life insurance beneficiary designation that Ducommun had in its files for Decedent, as well as copy of the accidental death and dismemberment insurance beneficiary designation that Ducommun had in its files for Decedent, both of which are dated February 4, 2005.  Rec. 184-89.  At this point, Hartford was on notice of the handwritten changes made to the life insurance beneficiary designation form that switched the primary and contingent beneficiaries (described in detail above), as well as that like changes were not made to the accidental death and dismemberment insurance beneficiary designation form.  Rec. 186-87; *see also* Rec. 152-55.  Notice of these changes and inconsistencies, however, is not notice of the alleged forgery.  Notably, at least to the untrained eye, the signatures on the two forms look remarkably similar.  *Compare* Rec. 186 *with* Rec. 187.  The August 30, 2007 fax also included a note (set forth in full above) indicating that Mr. Francis had requested the beneficiary designation form as "he stated the children are suing him and he needs to show he is the primary beneficiary."  Rec. 185.  Thus, as of August 30, 2007, Hartford was in possession of information indicating that there was a dispute between

Mr. Francis and Decedent's children. While this information indicates a dispute existed, it does not indicate that Decedent's children believed the applicable beneficiary form was forged; rather, it would appear that the parties were not in possession of the form, as Mr. Francis apparently believed the dispute could be resolved by reference to the beneficiary designation form.[3]

Further, while Plaintiffs contend that Hartford conducted no investigation before paying benefits to Mr. Francis, the administrative record is to the contrary. The record indicates that in light of the handwritten changes to the life insurance beneficiary designation form, Hartford requested (and received) the original forms from Ducommun. Rec. 4, 152-57. Hartford also requested copies of the other insurance enrollment forms in Decedent's file, which included a UNUM form from 2001 designating three of Decedent's children as beneficiaries and an Aetna form from 2004 designating Mr. Francis as the beneficiary and three of Decedent's children as "Covered Dependents." Rec. 151, 158-62. After receiving these documents, a September 18, 2007 note indicates that the claim was discussed internally and a decision was made to pay benefits to Robert Francis as named beneficiary. Rec. 3. By a letter dated September 19, 2007, Mr. Francis was notified of the claim determination.[4] Rec. 54-55.

_____

[3] While Plaintiffs accuse Hartford of making "material misstatements" in its motion and specifically contend that Hartford misrepresented that it was not aware of any competing claim and misrepresented that it did not have reason to question the change of beneficiary designation, as discussed above, the Court finds that Plaintiffs overstate what was known to Hartford at the time it paid the claim. Moreover, Plaintiffs' implicit suggestion that such alleged misstatements in the motion render Hartford's decision unreasonable or constitute a breach of fiduciary duty that would make Hartford liable for allegedly wrongfully paying benefits to Mr. Francis is without foundation. As discussed above, the assessment of Hartford's claim determination must focus on the evidence before Hartford at the time its decision was made.

[4] While Plaintiffs also cite a letter dated September 19, 2007 that was sent to Hartford by an attorney representing Mr. Francis, which (as discussed in detail above) noted the existence of a dispute between Mr. Francis and Decedent's children and requested a copy of the beneficiary designation form in hopes of resolving the dispute, this letter was not stamped received by

Based on the administrative record, the Court cannot say that Hartford's determination was arbitrary or capricious or that Hartford breached its fiduciary duty by failing to investigate competing claims.  As noted above, while there is evidence of a dispute between Mr. Francis and Decedent's children, Hartford was not on notice at the time it paid Mr. Francis that Plaintiffs were alleging the beneficiary designation form was forged, nor had Plaintiffs submitted any claim to Hartford (despite their earlier communications with Hartford and apparent receipt of the claim form from Ducommun).[5]  Further, in light of the handwritten changes and inconsistencies between the two Hartford beneficiary designations forms, Hartford requested additional

---

Hartford until October 1, 2007 (after the claim had been paid).  Rec. 190-93.  Moreover, the letter, like the note included with the August 30, 2007 fax, does not indicate that forgery is alleged, but instead indicates that Mr. Francis believed the dispute could be resolved by reference to the beneficiary designation form.  *Id.*

[5]  This Court acknowledges that a fiduciary cannot turn a blind eye to readily available information when the evidence in the record suggests that such information might confirm a beneficiary's theory of entitled and when there is little or no evidence in the record that would refute the theory of entitlement.  *Smith v. N.M. Coal 401(k) Pers. Sav. Plan*, 334 Fed. Appx. 150, 158 (10th Cir 2009) (unpublished).  That, however, is not what happened here and this case is readily distinguishable from those upon which Plaintiffs rely in arguing that Hartford failed to properly investigate.  In *Carland v. Metropolitan Life Insurance Company*, for example, the plan administrator ignored the dispositive document—the divorce decree upon which the plaintiff's claim was based—despite the fact that prior to making its beneficiary determination, the claim administrator had received a copy of the divorce decree from the employee (prior to his death), a letter from the employee's ex-wife notifying the insurer of her claim and enclosing the relevant portions of the divorce decree, and a certified copy of the divorce decree.  935 F.2d 1114, 1117 & 1121-22 (10th Cir. 1991).  *Carland* is also distinguishable in that it involved a *de novo* standard of review.  *Id.* at 1118.  Likewise, in *Smith v. New Mexico Coal 401(k) Personal Savings Plan*, the claim administrator, in disbursing funds, not only ignored a Stipulation for Validation of Marriage that had been hand-delivered by Plaintiff and a letter from Plaintiff's lawyer formally notifying the administrator of her potential claim, it also violated its own claim procedures.  334 Fed. Appx. at 153-54 & 158-60.  Here, by contrast, Hartford did not ignore claim dispositive evidence that was part of the record before it, was not on notice that Plaintiffs were claiming the beneficiary form had been forged, and, in fact, conducted an investigation (albeit limited) after observing the handwritten changes.  *Cf. Crosby v. Crosby,* 986 F.2d 79, 83 (4th Cir. 1993) (an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims).

21

information from Ducommun.  Thus, at the time Hartford made the decision to pay Mr. Francis,

its decision was supported not only by the applicable beneficiary designation form and plan

provisions, but it was also in possession of evidence that Mr. Francis was Decedent's spouse at

the time of her death (Rec. 167); that in April 2004 (less than a year before the date of the

beneficiary designation form at issue here), Decedent had designated Mr. Francis as her

beneficiary on an Aetna life enrollment form (Rec. 160); and that apart from the four forms it

had been provided, Ducommun had no other beneficiary designation forms in its file for

Decedent (Rec. 151).  Moreover, the applicable beneficiary designation form predated

Decedent's death by over two years.  Rec. 152-53 & 186.  Accordingly, this Court finds that

Hartford's claim determination was reasonable and there is no evidence of bad faith.  While

Plaintiffs argue that Hartford should have taken other steps prior to making any payment—such

as initiating a more extensive internal investigation as to who were the legal beneficiaries,

sending correspondence to both Mr. Francis and Decedent's children requesting additional

information, or  seeking a judicial determination of the legal beneficiary[6]—the Court declines to

hold that Hartford's failure to take additional steps rendered its decision arbitrary or capricious.[7]

---

[6]  Plaintiffs also argue that Hartford should have contacted Ms. Montoya in 2005
regarding the differences between her life insurance beneficiary designation and her accidental
death and dismemberment insurance beneficiary designation.  However, as under the plan,
beneficiary designation forms are maintained by Ducommun and any changes to the
designations are submitted to Ducommun, Hartford would not have been on notice of the
discrepancy in 2005.  Rec. 96 & 106.  While the administrative record does indicate that
Ducommun submitted a copy of the relevant form to Hartford on May 16, 2007 for use in
determining whether Erna Montoya was entitled to waiver of premium benefits as a result of her
disability (and specifically for the purpose of determining what coverage Ms. Montoya had
elected to receive), receipt of the form for this purpose would not necessarily trigger a review of
the designated beneficiaries.  Rec. 7, 17-21, 171-72.

[7]  Notably, one of the fundamental purposes of ERISA is to promote efficient and timely
determination of claims.  *Kennedy*, 129 S. Ct. at 875-76; *Sandoval*, 967 F.2d at 380.

**C.      Plaintiffs' Extra-Record Evidence of Forgery**

In opposing Hartford's motion for summary judgment and in support of their own motion

for summary judgment, Plaintiffs rely on evidence that is not part of the administrative record

that they contend establishes as a matter of law that the applicable beneficiary designation form

was forged, including the affidavit/report by Forensic Document Examiner Thomas E. Van

Valkenburgh (Doc. 20-3), the affidavit of Decedent's son, Eugene Czyz (Doc. 20-4, Ex. 8), and

the affidavit of Decedent's sister, Darlene A. Montoya (Doc. 20-4, Ex. 9)—all of which were

prepared in March 2009, months after this lawsuit began.  Plaintiffs also submit a 7-page

facsimile that Plaintiffs' counsel received on September 28, 2010 from Julia Pereira, the Human

Resource Manager of Ducommun.[8]  (Docs. 53-1 & 53-2).  Plaintiffs' reliance on this extra-

record evidence is misguided for multiple reasons.

First, as discussed above, where an arbitrary and capricious standard of review is

applicable, Tenth Circuit "case law prohibits courts from considering materials outside the

administrative record where the extra-record materials sought to be introduced relate to a

claimant's eligibility for benefits."  *Murphy*, 619 F.3d at 1162; *see also Holcomb*, 578 F.3d at

1192; *Weber*, 541 F.3d at 1011; *Hall*, 300 F.3d at 1201; *Sandoval*, 967 F.2d at 380-81; *Woolsey*,

934 F.2d at 1460.  Accordingly, in assessing whether substantial evidence supported a claim

determination, "the district court must evaluate the record as it was at the time of the decision."

*Sandoval*, 967 F.2d at 381 (explaining that "[t]he district court's responsibility lay in

determining whether the administrator's actions were arbitrary or capricious, not in determining

whether [claimant] was, in the district court's view, entitled to . . . benefits" and therefore the

---

[8]  As the September 28, 2010 facsimile is the subject of Hartford's motion to strike, it is
discussed in further detail below.

court must consider only evidence that was before the administrator at the time of his or her final decision). "ERISA's fiduciary provisions do not require a plan administrator to consider evidence submitted after a final benefits decision is made." *Grosvenor v. Qwest Commc'ns Int'l*, 191 Fed. Appx. 658, 663 (10th Cir. 2006) (unpublished); *see also Sandoval*, 967 F.2d at 381. As the report by Thomas E. Van Valkenburgh (Doc. 20-3) and the affidavits of Eugene Czyz (Doc. 20-4, Ex. 8) and Darlene A. Montoya (Doc. 20-4, Ex. 9), which all relate to the issue of benefits eligibility, were not part of the administrative record and were not even created until months after this lawsuit was initiated, the Court may not consider this evidence in determining whether Hartford's claim determination was reasonable.

Fundamentally, Plaintiffs reliance on this evidence and request that this Court determine as a matter of law that the beneficiary form was forged misconstrues the issue before the Court. Mr. Francis is not party to the instant litigation. The only defendant is Hartford. Whether Hartford is liable under ERISA turns on whether it acted arbitrarily and capriciously, not on whether Mr. Francis fraudulently altered the beneficiary designation. As noted above, in order to meet this standard, Hartford's claim determination need not be the only logical one nor even the superlative one. *Adamson*, 455 F.3d at 1212. Rather, Hartford's claim decision will be upheld as long as it is predicated on a reasoned basis. *Graham*, 589 F.3d at 1357; *Adamson*, 455 F.3d at 1212. The fact that after the filing of this suit, Plaintiffs obtained extra-record evidence of forgery does not negate this Court's conclusion that Hartford's claim determination was predicated on a reasoned basis. While it is true that in disputes between claimants, federal courts will apply federal common law to claims of undue influence or forgery in ERISA cases relating to insurance beneficiary designation forms and can, if appropriate, take into account state law on undue influence and forgery, *see, e.g., Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir.

24

2000), this case was brought only against Hartford and challenges a benefit determination that has already been made.  As such, the question for this Court is not whether Mr. Francis engaged in forgery, but rather whether Hartford's claim determination was arbitrary and capricious.  *See Maddox v. Aetna Life Ins. Co.*, No. 04-73478, 2006 WL 1235117, at *2 (E.D. Mich. May 8, 2006).

Second, even assuming *arguendo* that the Court could consider such evidence, the evidence does not establish forgery as a matter of law.[9]  While Hartford has not submitted a counter affidavit rebutting the conclusions of Mr. Van Valkenburgh, there is other evidence in the record that creates genuine issues of material fact.  For example, while Plaintiffs contend that "[p]rior to her death, Erna Montoya was suffering from terminal ovarian cancer and was in [a] great amount of pain and was heavily medicated with Morphine and other paid medications which affected her judgment and mental capacities" and suggest that Mr. Francis took advantage of Decedent's impaired judgment to alter the beneficiary designation form (Doc. 44 at p. 7, ¶ 10), the beneficiary designation forms were in the possession of Ducommun and bear a February 4, 2005 date (more than two-years prior to Decedent's death and well-before she had

---

[9]  The Court notes that there are also evidentiary problems with portions of the affidavits. For example, Eugene Czyz's affidavit relies on hearsay and speculation regarding Decedent's intent.  Likewise, while Darlene Montoya may have personal knowledge regarding her observations as to the binder she viewed, her opinion that "Robert Francis forged Erna Montoya's insurance forms for the payment of any insurance proceeds" and that the proceeds paid to him "should have gone to Erna Montoya's natural children" does not necessarily follow from her personal observations, does not aid the Court in its assessment of the evidence, and would appear to be based in part on hearsay and speculation regarding Erna Montoya's intent. *Fisher v. Okla. Dep't of Corr. Unknown State Actor and/or Actors*, 213 Fed. Appx. 704, 707-08 (10th Cir. 2007) (unpublished) (noting summary judgment evidence must be based on more than mere speculation, conjecture, or surmise and finding affidavits insufficient to withstand summary judgment as they were based on hearsay and/or speculation); *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (in reviewing a motion for summary judgment, conclusory allegations without specific supporting facts have no probative value).

ceased working due to her illness).  Rec. 4, 96, 106, 151-62, 167 & 184-89.  In light of the fact

that the forms were in the possession of Ducommun, it is unclear how Mr. Francis could have

accessed the forms to commit the alleged forgery.  Moreover, as noted above, Ducommun had an

Aetna life insurance form on file dated April 28, 2004 that also designated Mr. Francis as the

beneficiary.  Rec. 160.  This evidence suggests an alternative conclusion, namely, that rather

than forgery, it was Erna Montoya's intent to designate Mr. Francis as the primary beneficiary.

Finally, the evidence that Plaintiffs submitted in connection with their reply brief in support of

their motion for summary judgment also suggests the absence of forgery.  The note by Ms. Roth

of Ducommun (attached to the September 28, 2010 facsimile) indicates that when Mr. Francis

contacted Ducommun's HR Department in mid-July 2007 and indicated that he was inquiring on

Erna Montoya's behalf as to who she had designated as the primary beneficiary on Policy

#OGL303457 (the policy at issue in this lawsuit), Ms. Roth advised Mr. Francis that

Ms. Montoya had designated him as the primary beneficiary and two sons and two daughters as

secondary beneficiaries.  (Doc. 53-2 at p. 5).  Further, the note indicates that Ms. Roth advised

Mr. Francis that to the extent Ms. Montoya wanted to make any change to the beneficiaries on

Policy #OGL303457, such change would need to be completed through Ducommun; there is no

record any change was requested.  (*Id*. at pp. 1 & 5).  Additionally, while the materials indicate

that Mr. Francis faxed Ducommun a general durable power of attorney for Erna Montoya in mid-

July, the fax cover sheet does not indicate that Mr. Francis was requesting any change to the

beneficiary of the relevant policy, but instead requests only that Ms. Roth inform them who

Ms. Montoya had listed as the beneficiary, as Ms. Montoya could not remember.[10]  (*Id*. at pp. 5-

---

[10]  Notably, the plan provides that "[i]n no event may a beneficiary be changed by a
Power of Attorney."  Rec. 106.

7).  Thus, the evidence Plaintiffs submit does not suggest that Mr. Francis made any attempt to change the beneficiary form in 2007, but instead indicates that he had already been designated as the beneficiary when he contacted Ducommun.  Moreover, the very fact that he was inquiring as to who the beneficiary was would appear inconsistent with any argument that he had earlier forged the document.   Accordingly, even were this Court able to consider the extra-record evidence, it would find that Plaintiffs have not established forgery as a matter of law.  Likewise, the factual dispute over whether a forgery took place, does not change the Court's conclusion that there remains substantial evidence to support Hartford's benefits determination.

**D.      Hartford's Motion in Limine to Strike Extra-Record Evidence**

Finally, the Court turns to Hartford's Motion in Limine to Strike Extra-Record Evidence, which seeks to strike the September 28, 2010 facsimile from Ducommun to Plaintiffs' counsel and the materials attached thereto.  As discussed at length above, where an arbitrary and capricious standard of review is applicable, Tenth Circuit "case law prohibits courts from considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits."  *Murphy*, 619 F.3d at 1162.  As the materials attached to the September 28, 2010 fax were in the possession of Ducommun and were not part of the administrative record relied upon by Hartford in making its claim determination, the Court finds that the motion is well-taken.

Plaintiffs argue, however, that the materials attached to the September 28, 2010 facsimile should be admitted as they demonstrate that the administrative record is incomplete and demonstrate a procedural irregularity in the record.  This argument, however, fails to acknowledge the separate roles of Ducommun and Hartford.  Ducommun maintained the beneficiary designation forms, not Hartford.  Rec. 4, 96, 106, 151-62 & 184-89.  While it is true

that Hartford requested certain materials from Ducommun in connection with its benefit determination, Hartford relied on Ducommun for transmission of the requested materials.  The Court acknowledges that the August 30, 2007 facsimile from Ducommun to Hartford does contain a note indicating that Ducommun is attaching "documentation from the July 16, 2007 conversation with Robert Francis."  Rec. 185.  However, the fax cover sheet for the August 30, 2007 facsimile indicates that a total of six pages were being transmitted and the transmission notes at the top of the pages likewise indicate a total of six pages were transmitted—all of which are part of the administrative record.  Rec. 184-89.  While the August 30, 2007 note may have put Hartford on notice that Ducommun communicated with Mr. Francis in mid-July 2007 and had some documentation of that communication, it does not indicate that Mr. Francis made any attempt to change beneficiaries or suggest that Ducommun had additional beneficiary designation forms that might be relevant.  Rec. 185.  Accordingly, this Court does not find that Hartford's failure to request additional information regarding Ducommun's July 2007 communications with Mr. Francis renders Hartford's decision arbitrary or capricious, nor does it find that the absence of documentation regarding the communications between Mr. Francis and Ducommun demonstrates a procedural irregularity in the administrative record.

Finally, as discussed above, even assuming *arguendo* that such extra-record evidence could be considered by the Court, the evidence does not establish forgery.  To the contrary, as discussed above, the evidence indicates that when Mr. Francis contacted Ducommun in mid-July 2007 to inquire who was the named beneficiary on the policy at issue, he was informed that he was the primary beneficiary; the materials attached to the September 28, 2010 facsimile do not indicate that Mr. Francis made any attempt to change the beneficiary designation. (Doc. 53-2 at pp. 5-7).

28

## CONCLUSION

**IT IS THEREFORE ORDERED** that

1.      Hartford's Motion for Summary Judgment (Doc. 42) is **GRANTED**;

2.      Plaintiffs' Motion for Summary Judgment Regarding the Void/Void Ab Initio Beneficiary Designations Due to Forgery (Doc. 46) is **DENIED**;

3.      Hartford's Motion in Limine to Strike Extra-Record Evidence (Doc. 57) is **GRANTED**; and

4.      Judgment will be entered in favor of Defendant Hartford Life and Accident Insurance Company.


DATED this 31st day of March, 2011.

_____

MARTHA VAZQUEZ

United States District Court Judge




Attorneys for Plaintiffs:
        Steven Vogel, Esq.
        Theodore W. Barudin, Esq.

Attorney for Defendant:
        Jack M. Englert , Jr., Esq.
        Kristina Martinez, Esq.